IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA THOMPSON, (K87909), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 04 C 3174 |
| | ) | |
| ANGELA LOCKE, Warden, | ) | Judge John Z. Lee |
| Logan Correctional Center,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Rhonda Thompson brings an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging her convictions entered in the Circuit Court of Cook County. She is serving a life sentence for her participation in a triple murder in Chicago, Illinois. For the following reasons, the Court denies the petition and declines to issue a certificate of appealability.

## Background

This petition involves the murder of Donald Mikesh, Kevin Carroll, and Keith Chavez, who were stabbed and beaten to death in the early morning hours of October 12, 1996. *See generally Illinois v. Thompson*, No. 1-99-0982 (Ill. App. Ct. Mar. 22, 2002) (Dkt. No. 44-2 at 1–6) (direct appeal).

At approximately 3:40 a.m. that day, Thompson drove to a bar with Colleen Turner. There, Thompson and Turner met Mikesh, an old acquaintance of Thompson. Co-defendants Kevin Aalders and Richard Fikejs were also at the bar. At around 4:00 a.m., Thompson, Turner,

---

[1] On the Court's own motion, Thompson's present custodian, Angela Locke, Acting Warden, Logan Correctional Center, is substituted in place of the named Respondent. Fed. R. Civ. P. 25(d); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

Aalders, and Fikejs left the bar and drove to a "party" at Mikesh's apartment, the location of the crime. *Id*.

Thompson was never accused of stabbing or beating the victims herself, and according to Thompson, Aalders and Fikejs physically carried out the crime. *Id*. at 5. The jury nevertheless convicted Thompson of murder under an accountability theory. *Id*. at 7.

The State introduced a number of facts during the trial to support Thompson's conviction. For example, the State presented evidence that, on the night of the murders, Thompson had driven Aalders, Fikejs, and Turner to Mikesh's apartment. There, a witness saw Thompson go to the kitchen and open a knife drawer. At some point, Turner went outside to look for cigarettes in Thompson's car. While outside, she saw Thompson and Aadlers exit the apartment with Thompson carrying a knife. When Turner asked her why she had a knife, Thompson told Turner, "You would freak anyway." Thompson and Aalders then went back to the apartment, and Turner heard the sound of breaking glass shortly thereafter. Evidence was presented that, during the killings, Thompson had wiped away fingerprints from the scene of the murders.

After the killings, Thompson fled from the apartment, disposed of the knife, did not report the incident to the police, and washed the clothes she had worn during the murders. The prosecution also presented an expert in crime scene reconstruction, who testified that one of the shoe prints found on Carroll's back was consistent with boots worn by Thompson that evening. *Id.* at 1–8. Evidence also was introduced at trial of Thompson's cocaine use that night, which "was admitted not to show [her] propensity to commit crime, but to establish the nature and closeness of her relationship with her codefendants." *Id.* at 8–9.

The Illinois appellate court affirmed Thompson's conviction on direct appeal. *Id.* at 24. Thompson then filed a Petition for Leave to Appeal ("PLA") with the Supreme Court of Illinois,

2

which was denied. *Illinois v. Thompson*, No. 94010, 786 N.E.2d 198 (Ill. Oct. 2, 2002) (Table) (Dkt. No. 44-6). The Supreme Court of the United States also denied her petition for a writ of certiorari. *Thompson v. Illinois*, 538 U.S. 1017 (May 5, 2003) (Table).

Following the denial of her petition for writ of certiorari, Thompson filed a *pro se* habeas corpus petition in this Court in May 2004. Dkt. No. 1. The petition was received and filed by the Clerk of Court on May 4, 2004, and raised three claims. First, Thompson claimed that the admission of evidence regarding her cocaine use on the night of the murders constituted a violation of due process. Second, she argued that the admission of statements by co-defendant Aalders violated the Confrontation Clause of the Sixth Amendment. Third, Thompson challenged the jury instructions as constitutionally inadequate. *Id.*

After Respondent answered the original petition, Judge Blanche M. Manning granted Thompson's request for attorney representation and recruited counsel to represent her in this case. Dkt. Nos. 11, 13. Judge Manning also instructed Thompson's assigned counsel to file an amended habeas corpus petition. Dkt. No. 11. Thompson's counsel then moved to stay these proceedings after determining that Thompson had not filed a post-conviction petition in the Illinois courts, and Judge Manning stayed this case in August 2005. Dkt. No. 19 at 2. Following the completion of the state post-conviction proceedings, Thompson returned to this Court with the present amended habeas corpus petition in May 2010. *See* Am. Pet.

Thompson raises a number of claims in her amended habeas corpus petition. She argues that: (1) there was insufficient evidence to support the conviction (Am. Pet. at 23–30); (2) the improper introduction of other drug crime evidence resulted in a violation of her due process rights (*id.* at 30–36); (3) she was denied her right to a fair trial when the trial court prohibited *voir dire* with respect to the potential drug evidence (*id.* at 36–38); (4) evidence was improperly

admitted at trial regarding Thompson's invocation of her right to remain silent and right to counsel (*id.* at 45–46); (5) the prosecutor misstated the evidence and made improper arguments to the jury violating Thompson's due process rights (*id.* at 46–52); (6) the trial court allowed inadmissible expert testimony (*id.* at 52–58); (7) the prosecution improperly introduced out-of-court statements by a co-defendant, violating her Sixth Amendment right to confront the witness (*id.* at 59–61); and (8) she received ineffective assistance from both her trial counsel and appellate counsel (*id.* at 38–45).[2]

## Analysis

I. **Statute of Limitations**

Respondent argues that Claims One, Three, Four, Five, Six, and Eight in the amended petition are barred under the statute of limitations. Thompson had one-year to file her habeas corpus petition following the completion of her direct appeal, 28 U.S.C. §§ 2244(d)(1)(A), which occurred on May 5, 2003 when the Supreme Court of the United States denied her request for a petition for a writ of certiorari. *See Jimenez v. Quarterman*, 555 U.S. 113, 119-20 (2009); *Anderson v. Litscher*, 281 F.3d 672, 674–75 (7th Cir. 2002).[3] Although Thompson filed the original petition within the one-year period on May 4, 2004, she did not file the amended habeas corpus petition until 2010.[4] Because the filing of the original petition did not toll the statute of

---

[2] Thompson initially listed her claims in one order in the amended petition, but discussed them in a different order throughout. *See* Am. Pet. at 9–10. The Court has reordered the claims for the sake of clarity and denoted them numerically, rather than alphabetically.

[3] Section 2244(d)(1) also recognizes three other dates from which the statute of limitations may run; none are relevant in this case. *See* 28 U.S.C. §§ 2244(d)(1)(B)–(D).

[4] Thompson cannot qualify for tolling of the state post-conviction petition under 28 U.S.C. § 2244(d)(2), because the state post-conviction petition was not filed until July 15, 2005, well after the one-year period expired. *See* Dkt. No. 44-7.

limitations, the claims in the amended petition must relate back to the original claims. *See Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).

Claims in an amended petition relate back to the original claims for purposes of the statute of limitations under 28 U.S.C. § 2244(d), when "the original and amended petitions state claims that are tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). The Court must focus on the "separate congeries of facts supporting the grounds for relief" in the original and amended petitions when evaluating if there is a common core of operative facts. *Id.* at 661. These facts "delineate an 'occurrence,'" and should the original claim and the amended claim arise from different factual occurrences, there is no relation back. *Id.* In short, an "amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

Upon first blush it appears that most of the claims set forth in the amended petition do not relate back to the original petition. The Court, however, need not engage in this analysis because Thompson has procedurally defaulted on each of her claims for the reasons set forth below. *See*, *e.g.*, *U.S. ex rel. Delaola v. Pillow*, No. 10 CV 665, 2011 WL 2200088, at *8 (N.D. Ill. June 3, 2011) (stating that even if habeas claim "was not time-barred, petitioner did not fairly present [it] to the state courts"); *Murphy v. Archuleta*, No. 06–cv–01899–MSK–KLM , 2009 WL 1456727, at *5 (D. Colo. May 21, 2009) ("Because the request for leave to amend is properly denied as procedurally defaulted, it is not entirely necessary for this Court to reach the Magistrate Judge's alternative conclusion that the Petitioner's new claim of voidness was untimely and would not relate back under Fed. R. Civ. P. 15(c).").

## II. Procedural Default Analysis

Generally, a federal court is precluded from reaching the merits of claims that are procedurally defaulted. Procedural default can occur in one of two ways. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). First, the petitioner must present the operative facts and controlling law of each claim before the state courts so that they have a meaningful opportunity to consider the claim before it is raised in federal court. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (citations omitted). If the petitioner fails to present the claim through all levels of the Illinois courts — including in a PLA before the Supreme Court of Illinois — that claim is procedurally defaulted. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–46 (1999)). Second, a claim is not preserved for federal habeas review if the state court resolves the issue on the basis of state-law procedural grounds that is both independent of the federal question and adequate to support the state court judgment. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) (citations omitted).

### A. Claim One

Claim One was adjudicated on the merits by the state appellate court on direct appeal. Dkt. No. 44-2 at 1, 6–8; Dkt. No. 44-3 at 2, 28–36. The claim was not, however, raised in Thompson's PLA on direct appeal before the Supreme Court of Illinois. *See* Dkt. No. 44-4. Nor was it raised in the state post-conviction proceedings. *See* Dkt. Nos. 44-7, 44-8, 44-9, 44-12. Because Thompson has failed to present the claim through one complete round of review in the Illinois courts, Claim One is procedurally defaulted. *Boerckel*, 526 U.S. at 842-46; *Guest*, 474 F.3d at 930.

### B. Claim Two

Claim Two alleges a due process violation based upon the introduction of her cocaine use at trial. Am. Pet. at 30–36. Claim Two contends that the prosecutor wrongfully argued this evidence to the jury in closing arguments. *Id.* Respondent notes, however, that while Thompson previously raised a state law evidentiary claim in the state courts as to this evidence, she did not present a federal constitutional claim at that time. Respondent is correct.

A state court's determination of whether evidence is admissible at trial raises a question of state law. *Hanson v. Beth*, 738 F.3d 158, 161–62 (7th Cir. 2013). The Court cannot review the state evidentiary ruling because "'habeas corpus relief does not lie for errors of state law.'" *Estelle v. McQuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffres*, 497 U.S. 764, 780 (1990)). However, evidentiary errors can result in a federal constitutional violation when the error "'so infused the trial with unfairness as to deny due process of law.'" *Estelle*, 502 U.S. at 75 (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)).

To properly exhaust the federal claim, Thompson must alert the state court of the federal nature of his claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A general appeal to due process is insufficient. *Gray v. Netherland*, 518 U.S. 152, 163 (1996). Rather, the substance of the federal claim must be presented to the state courts so that the state court has the opportunity to correct the federal violation in the first instance. *Id.* at 163; *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam). "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan*, 513 U.S. at 366.

Here, Thompson framed the matter before the state appellate court as an erroneous evidentiary ruling. Dkt. No. 44-3 at 2. The appellate brief argued that the evidence would play

7

on the "fear and prejudice" of the jury regarding "drug dealing." *Id*. at 36 (citation omitted). Thompson further argued that the drug evidence was more prejudicial than probative. Dkt. No. 44-3 at 37–38. In her subsequent PLA, she likewise focused on the evidentiary failings without raising any due process concerns or explaining that the appellate court overlooked or mischaracterized the claims. Dkt. No. 44-5 at 4–9. Therefore, Thompson did not adequately present the claim to the state courts.

It is true that Thompson cited in passing to the 14th Amendment of the United States Constitutional and *Donnelly v. DeChistoforo*, 416 U.S. 637 (1974). *See* Dkt. No. 44-3, at 36. But simply mentioning the due process clause in one sentence and then proceeding to discuss at length the relevant state evidentiary law fails to place the state court on notice of one's intent to raise a federal due process claim. *See Gray*, 518 U.S. at 163 ("[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."); *see also Harding v. Sternes*, 380 F.3d 1034, 1047 (7th Cir. 2004) (quoting *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001)) (A mere "passing reference" to a constitutional claim is insufficient "'to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court.'"). Thompson needed to substantively address the issue so that the state courts could properly address the federal question. Because she did not, Claim Two is barred by procedural default.

C.    **Claim Three**

Claim Three alleges a denial of a right to a fair trial due to the trial court's refusal to allow *voir dire* regarding potential biases against drug use. Dkt No. 37 at 36–38. Thompson did not raise this claim in the state courts. However, when Thompson appealed the state trial court's denial of her post-conviction petition, she did argue that her appellate counsel was ineffective for

8

failing to raise the *voir dire* issue on direct appeal. *See* Dkt. No. 44-7 at 3. According to Thompson, this is sufficient to overcome the argument that she had procedurally defaulted her underlying due process claim. "[B]ut the fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the *underlying* issue that the attorney in question neglected to raise." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (emphasis added). In any event, Thompson did not renew the ineffective assistance of counsel claim in the PLA on post-conviction review. *See* Dkt. No. 44-7. Thus, even assuming that Thompson had adequately preserved her due process claim by arguing to the appellate court on post-conviction review that her appellate counsel had been ineffective for failing to raise it on direct appeal, she did not assert Claim Three "through one full round of state-court review," *Johnson*, 574 F.3d at 431, and this claim must be dismissed.

### D. Claim Four

Claim Four alleges that evidence was improperly admitted at trial regarding Thompson's invocation of the right to remain silent and right to counsel. Am. Pet. at 45–46. This claim was presented to the state appellate court on direct appeal. Dkt. No. 44-2 at 1, 13-15; Dkt. No. 44-3 at 49–50). Thompson did not raise the claim in her PLA. *See* Dkt. No. 44-5. Thompson also did not raise the claim in the following post-conviction proceedings. Because Thompson has failed to present the claim through one complete round of review in the Illinois courts, Claim Four is procedurally defaulted.

### E. Claim Five

Claim Five asserts the prosecutor misstated evidence and made certain improper arguments to the jury. Am. Pet. at 46–52. Like Claim Four, this claim was presented to the state appellate court on direct appeal, *see* Dkt. No. 44-2 at 1, but was not raised in the PLA. *See* Dkt.

No. 44-5. Nor did Thompson raise the claim in her post-conviction proceedings. Thus, Claim Five is also procedurally defaulted.

### F. Claim Six

Here, Thompson asserts that the trial court erroneously admitted expert testimony offered by the prosecution. Am. Pet. at 52–58. As noted above, evidentiary issues traditionally raise questions of state law. That said, in those circumstances where an evidentiary error results in fundamental unfairness, such an error may raise a cognizable federal due process claim. *Estelle*, 502 U.S. at 67, 75. In this case, however, Thompson failed to argue in her briefs to the Illinois appellate court and the Illinois Supreme Court that the admission of the prosecution's expert testimony caused a federal due process violation. Dkt. No. 44-3 at 68-73, Dkt. No. 44-5 at 14–17. Instead, her arguments focused exclusively on the evidentiary basis of one of the trial court's rulings that she believed was erroneous.

In response, Thompson contends that, by arguing that the expert testimony violated Fed. R. Evid. 703, she sufficiently raised a federal claim before the state courts. This is incorrect. As Thompson herself recognized, "the Supreme Court of Illinois adopted Rules 703 and 705 of the Federal Rules of Evidence to apply in Illinois to issues related to the admissibility of evidence." Dkt. No. 44-3 at 72. *See also Ambrose v. Roeckeman*, 749 F.3d 615, 620 (7th Cir. 2014) (citing *Wilson v. Clark*, 417 N.E.2d 1322, 1326–27 (Ill. 1981)). Accordingly, the application of Rule 703 by the state courts to determine admissibility is an issue of Illinois law. *See Britz v. Cowan*, 192 F.3d 1101, 1102–03 (7th Cir. 1999) ("[A] state cannot expand jurisdiction by deciding to copy a federal law. If it incorporates federal law into state law and then gets the federal law wrong, it has made a mistake of state law, which cannot be a basis for federal habeas corpus.").

For these reasons, Thompson has not preserved this argument as a federal claim for habeas corpus review.

G.  **Claim Seven**

Thompson argues in Claim Seven that her Sixth Amendment right to confront witnesses was violated when the prosecution introduced statements from a non-testifying co-defendant. Am. Pet. at 59–61. Thompson contends that she exhausted the claim by raising it on direct appeal before the state appellate court and in her PLA. Dkt. No. 44-3 at 3, 44–45, Dkt. No. 44-5 at 18–21. But this ignores the fact that the state appellate court — the last court to consider the claim — held that Claim Seven was barred by state law and explicitly stated that Thompson had "waived review by failing to raise the issue in her motion for a new trial." Dkt. No. 44-2 at 11.[5] This constitutes an adequate and independent state law basis for the appellate court's decision, resulting in a procedural default. *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010).

That the state court went on to also discuss Claim Seven on the merits does not alter this conclusion. *See id.* at 11–12. As the Supreme Court recognized, "a state court need not fear reaching the merits of a federal claim in an alternative holding." *Harris*, 489 U.S. at 264 n.10 (emphasis omitted). Indeed, "[b]y its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, *even when the state court also relies on federal law*." *Id.* (emphasis added).

Thompson's reliance upon *Moore v. Bryant*, 295 F.3d 771 (7th Cir. 2002), is unavailing. There, the Illinois post-conviction court itself "[had] not conclude[d] that the direct appeal court's waiver determination barred consideration of [the] claim on collateral review." On this basis, the Seventh Circuit found that waiver could not constitute an independent and adequate

---

[5] "In this context, waiver means the intentional relinquishment of a known right, not merely the failure to timely assert a right, which is properly referred to as forfeiture." *Kaczmarek*, 627 F.3d at 594.

state ground precluding federal review. *Id.* at 775. In so doing, the Seventh Circuit cited to the Third Circuit's holding "that a waiver determination on direct appeal is not an independent and adequate state ground *when on collateral review the state courts treated the direct appeal decision as resting on the merits and not on waiver.*" *Id.* (emphasis added). No such findings were made by the state courts on collateral review in this case. As such, Thompson's procedural default precludes the consideration of this claim.

### H. Claim Eight

Claim Eight raises several ineffective assistance of counsel arguments. In particular, Thompson contends: (1) appellate counsel was deficient in failing to raise on appeal the trial counsel's failure to allow *voir dire* regarding drug evidence; (2) trial counsel was ineffective for failing to call Peter Nelms to impeach Colleen Turner's testimony; (3) trial counsel was ineffective for failing to object to the prosecutor's closing arguments regarding the drug evidence; (4) trial counsel was deficient in failing to object to the state's evidence that Thompson had invoked her right to silence and to counsel; (5) trial counsel was ineffective for failing to object to additional improper comments made by the prosecution during closing arguments; and (6) trial counsel was ineffective for failing to present the issue of inadmissible hearsay in a post-trial motion. Am. Pet. at 38–45. Although it is a single claim, when a prisoner has alleged multiple grounds for ineffective assistance of counsel, each ground must be independently exhausted in the state courts. *Pole*, 570 F.3d at 934–35. Here, Thompson failed to exhaust any of her ineffective assistance of counsel arguments.

Thompson initially argued before the appellate court on direct appeal that "trial counsel was ineffective for waiving many [alleged trial errors]." *See* Dkt. No. 44-2 at 24. She thereafter abandoned any ineffective assistance of counsel claims in her PLA on direct appeal. *See* Dkt.

No. 44-5. Then, in her post-conviction proceedings, Thompson asserted new ineffective assistance of counsel claims based upon counsel's failure to raise the *voir dire* issue and to call Peter Nelms to impeach Colleen Turner. Dkt. No. 44-9 at 22–37. These arguments were also subsequently abandoned in the post-conviction PLA.[6] *See* Dkt. No. 44-12. Consequently, Claim Eight is procedurally defaulted.

## I. Cause and Prejudice & Fundamental Miscarriage of Justice

In the alternative, Thompson argues that her numerous defaults should be excused.[7] A district court may excuse a procedural default if the petitioner "can demonstrate either (a) cause for the default and prejudice (*i.e.*, the errors worked to the petitioner's 'actual and substantial disadvantage,'); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.*, a claim of actual innocence)." *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis added).

Cause is an "'objective factor, external to [Thompson] that impeded [her] efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). The Supreme Court has "identified three types of 'objective factors' that would constitute sufficient cause: (1) 'interference by officials that makes compliance . . . impractical'; (2) constitutionally ineffective assistance of counsel; and (3) 'a showing that the factual or legal basis for a claim was not

---

[6] The only reference to ineffective assistance of counsel in the second PLA is the question of what is necessary to allege such a claim under the pleading standards of the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122. Dkt. No. 44-12 at 11–13. Notably, Thompson did not ask the Supreme Court of Illinois to consider any of her *Strickland* arguments and thus failed to preserve the issues. *See Pole*, 570 F.3d at 935 ("[I]f a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted.").

[7] Respondent contends that the Court should not address these arguments because Thompson failed to raise them in her petition. Answer 36. But procedural default is an affirmative defense, and consequently it is Respondent's duty to first raise the issue in the answer. *Kaczmarek*, 627 F.3d at 592. Given this fact, it would make little sense to punish Respondent for not addressing this in her petition.

reasonably available to counsel.'" *Guest*, 474 F.3d at 930 (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)). Only the second factor is raised here.

To the extent that Thompson now contends her failure to exhaust certain issues on direct appeal were caused by ineffective assistance of counsel, that argument must have been exhausted in the state courts, or it too is procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Because Thompson did not raise this issue in her PLA on direct appeal, it cannot be used to excuse the procedural defaults now. On the other hand, to the extent that Thompson is arguing that her failure to exhaust certain issues on post-conviction review should be excused due to the ineffective assistance of post-conviction counsel, this argument also fails because a petitioner has no constitutional right to an attorney during post-conviction proceedings. *See Dellinger v. Bowen*, 301 F.3d 758, 767 n.10 (7th Cir. 2002). Accordingly, Thompson cannot rely on ineffective assistance of counsel as cause to excuse her procedural defaults.

Thompson's only remaining course is to claim the fundamental miscarriage of justice exception — or "actual innocence." While this exception provides a "gateway" for habeas petitioners who have procedurally defaulted their claims or cannot meet the cause and prejudice standard, that "gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1936 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). That is not the case here. Indeed, Thompson merely reargues the evidence that was presented at trial and speculates that had certain alleged trial errors not occurred, the jury may have come to a different conclusion. *See* Pet'r's Reply 10–11. This is insufficient to meet the stringent standard.

The only new evidence presented by Thompson is the affidavit of Peter Nelms, which states that Nelms spoke with Colleen Turner after Turner left the apartment. Am. Pet., Ex. D at 1. According to Nelms, Turner told Nelms that Thompson was in trouble inside the apartment and that Aalders had told Turner to leave because Turner would "freak if she stayed." *Id.* According to Thompson, Nelms' testimony would have been useful in impeaching Turner because defense counsel could show that although Turner had testified that Thompson had a knife when leaving the apartment, she apparently never told Nelms about the knife. Pet'r's Reply 11. But this new evidence falls far short of the "demanding" standard imposed in *Schlup*. *McQuiggin*, 133 S. Ct. at 1936. Nelms' affidavit does not demonstrate Thompson's innocence and, in fact, reinforces the prosecutor's case by confirming that Turner had waited for Thompson outside of the apartment at the time of the murder when she heard "commotion and noise and breaking glass from the apartment." Am. Pet., Ex. D at 1.

In sum, Thompson has presented no arguments or evidence that provides this Court with reason to question its "confidence in the outcome of the trial." *Id.* Consequently, the fundamental miscarriage of justice exception does not save Thompson's claims.

### III. Certificate of Appealability

Under § 2253(c)(2) of Title 28, "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "The Supreme Court has observed that an applicant has made a 'substantial showing' where 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Resendez v. Knight*, 653 F.3d 445, 446-47 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Here, this Court

concludes that Thompson has not made a substantial showing of the denial of a constitutional right or that reasonable jurists would debate the resolution of her claims. Accordingly, the Court declines to issue a certificate of appealability.

### Conclusion

The amended petition for a writ of habeas corpus [37] is denied. The Court declines to issue a certificate of appealability. The Clerk is instructed to: (1) update the docket to reflect that the Respondent is Angela Locke, Warden, Logan Correctional Center; (2) alter the case caption to *Thompson v. Locke*; and (3) enter a Rule 58 Judgment in favor of Respondent against Petitioner. Any pending motions are moot. Civil case terminated.

**SO ORDERED**           **ENTER: 9/1/15**

_____
**JOHN Z. LEE**
**United States District Judge**